IN THE

# SUPREME COURT OF JUDICATURE

OF THE

# STATE OF NEW JERSEY,

## AT FEBRUARY TERM, 1869.

---

THE STEPHENS AND CONDIT TRANSPORTATION COM-
PANY v. THE CENTRAL RAILROAD COMPANY OF NEW
JERSEY.

1. A supplement to an act incorporating a private company, containing
a clause that "it shall be deemed and taken as a public act," will itself
receive judicial recognition.

2. A declaration, the *gravamen* of which was that the defendants had
built a railroad bridge over navigable water, *held* bad on *demurrer*, it
appearing to the court, from the charter of the defendants and its sup-
plement, that they were authorized to extend their road over the water
in question, and to erect bridges over all navigable waters in the line
of such extension.

3. It is a rule of pleading, that where there are two intendments, that
one must be taken which is most against the party pleading.

4. In actions for *torts* by incorporated companies, the correct mode of
pleading is, to show a case in the declaration to all appearance stand-
ing aloof from the statutory right of the company ; but if a color of
right to do the act in question is shown in the company, then the abuse
of such right must be laid.

---

This was a demurrer to the first two counts of the decla-
ration. The action was in case, for obstructing Newark bay,

229

to the special injury of the defendants. The wrongful acts of the defendants were thus stated: "But the said defendants, not regarding, &c., wrongfully and injuriously, and in a wrongful and injurious manner, did build and construct a certain railroad bridge, otherwise called a viaduct, across the said Newark bay, and did, in the erection and construction thereof, wrongfully and injuriously and unlawfully drive into the said Newark bay, and into the grounds under the waters thereof, a large number of piles and sticks of timber, to wit, five hundred, and did place such sticks of timber so near to the navigable channel of said Newark bay, as greatly and unlawfully to obstruct and narrow said channel, and impede, hinder and obstruct the navigation of said Newark bay, and the navigable channel thereof, at the township, &c., by means," &c.

For plaintiffs, *T. Runyon* and *T. N. McCarter*.

For defendants, *C. Parker* and *B. Williamson*.

BEASLEY, CHIEF JUSTICE. The counts of the declaration in this case which have been demurred to, charge, in substance, that the defendants have built a bridge, or viaduct, over Newark bay, whereby its navigability is diminished. It is also shown that, from this cause, special damage has been sustained by the plaintiffs. The defendants take exception to these counts, on the ground that, by a supplement to their charter, passed on the 23d February, 1860, they are authorized to bridge this water for the purposes of their road, and that there is nothing which appears in the counts in question, which shows that the bridge, whose erection is complained of, is not a proper exercise of such authority.

To this position the plaintiffs answer, *first*, that the supplement to the charter, upon which the defendants rely as their license for doing the acts complained of, is not a public act, and, consequently, cannot be judicially noticed, but must be set up by plea.

Stephens & Condit Transportation Co. v. Central Railroad Co.

But this objection, I think, cannot be supported. In the original act chartering the defendants, it is declared that such act "shall be deemed and taken as a public act, and shall at all times be recognized as such in all courts and places whatsoever." Thus, the charter being made a public act, its supplements, of necessity, would seem to become such also; because the supplement is a mere modification or addition to the original act. This charter, in express terms, is made a part of the public law of the state; the supplement in question modifies that public law, and I cannot understand by what process such a statute is to be held to be a matter of mere private interest. Certainly, there would be some inconvenience attending the adoption of such a rule, for the courts would no longer, even in theory, be cognizant of the whole of the public law of the state. By stress of the doctrine thus claimed, one of these laws, although repealed, would have to be enforced, unless judicial blindness should be enlightened by the requisite proofs. No authority was referred to in support of this proposition of the counsel of the plaintiffs, and I do not perceive any solid ground on which it can rest. Nor does it seem to me that there is any force in the appeal, made in its support, to the statute entitled "an act to increase the revenues of the State of New Jersey." *Nix. Dig.* 915, § 35.* It is true that by this law all acts incorporating railroad companies are classified as private acts; but this is done for a special purpose, that is, to render them subject to certain fees. There can be no doubt that any act incorporating a railroad company would, within the scope of this statute, be declared a private act, although containing an express provision that it should be taken by all courts as a public law. The argument, if prevalent, therefore, would apply with the same force to the original charter of these defendants as to this supplement. Mr. Chitty, in one of his notes to 1 *Black. Com.* 85, points out the distinction which exists, in parliamentary language, between the general rule of law, as to public and private acts, and this classification of acts with respect to fees. The statute

* *Rev.*, p. 1223, § 66.

referred to does not, in my opinion, affect, in any degree whatever, the character of legislative enactments in the respect now under consideration. The consequence is, that, in applying the law to this record now before us, we must notice and give effect to this supplement enlarging the powers of these defendants.

But, *second*, it is contended for the plaintiffs that, on the assumption the court will take into account the act in question, the counts demurred to are legally sufficient. The argument was, that a cause of action sufficiently appears, inasmuch as it is alleged that the bridge was made in an *unlawful* manner, and that the defendants *unlawfully* drove piles into the ground under the water of the bay, and *unlawfully* obstructed the channel.

But I think a little reflection will lead to the conclusion that these terms, thus relied on, are entitled to but little effect. The rules of pleading clearly require a statement of facts which show, to a reasonable certainty, that the party sued has done something rendering him liable to the action. Neither adjectives nor adverbs, no matter how numerous or sonorous, can fill the place of such substantial statements. A count which should allege that the defendant unlawfully drove his horse and wagon along a public highway, and thereby unlawfully narrowed the same, so that thereby the plaintiff sustained injury, would be bad. The obvious reason would be that the defendant had a legal right to do the act charged upon him, that is, to drive along the highway and thereby narrow it, and merely calling such act unlawful, would not make it so. And so with regard to this pleading, if the acts charged against these defendants are not, in the eye of the law, wrongful, the nature of such acts cannot be changed by any mere verbal stigma in the power of the plaintiffs. The question, then, is, and this appears to me to be the material one in the case, what facts are charged, in a legal sense, in the counts demurred to? The allegations in substance are these: that the defendants built and constructed a railroad bridge, otherwise called a viaduct, across

the waters of Newark bay, and in the erection and construction thereof drove into the bay a large number of piles and sticks of timber, so as to obstruct and narrow the channel. It will be observed, that there are no facts stated which even tend to show that this structure is either improperly located or improperly constructed. Now, the supplement to the defendants' charter, to which I have before adverted, empowers this company to extend their road from Elizabeth city to New York bay, and in doing so to "construct a suitable bridge over any navigable water that they may cross." I have already said, this supplement must receive judicial recognition. If, then, we are to understand that the bridge described in the declaration is a bridge built by force of this supplement, it would seem necessarily to follow, that the counts in question disclose no ground of action. If the defendants, so far as appears from the facts contained in this record, have done nothing but what the act authorizes, of course it will not be pretended that any liability to a suit is exhibited against them. The inquiry, then, is, is it shown that the defendants have done the act complained of tortiously, and not by virtue of the supplement to their charter?

It is insisted on the side of the plaintiffs, that it does not appear, and that the court therefore will not intend, that the bridge in question was erected in the extension of the defendants' railroad, and in pursuance of their statutory power. But is there any legal principle on which such a contention can rest? This bridge is described as a railroad bridge; it is located between the *termini* of the authorized extension of the defendants' road; and if it is not in the line of that extension, for what object has it been erected? Most assuredly no one can deny that the conclusion that this bridge is not a part of the extension of the defendants' road, would be a very forced and improbable one. And it should be noticed, that if the facts stated are fairly susceptible of two interpretations, that one which is most favorable to the defendants, on the plainest rules of law, is to be accepted by the court, because the defendants cannot be made wrong doers by im-

plication. The plaintiffs charge the defendants with the commission of a tort; by the established rules of pleading they must, in a reasonable degree, make the commission of such tort manifest; the burthen is upon them, and they cannot ask the court to assist them by drawing incredible inferences. If it is an essential part of the plaintiffs' case, that this bridge has been improperly located out of the line of the extension of the railroad as authorized by law, then such fact should have appeared in these counts. The plaintiffs might as well ask the court to imply that the bridge has been improperly constructed, as to infer that it has been improperly placed. Comyn, in his Digest, thus states the familiar rule of pleading : " The count should show, plainly and certainly, all the circumstances material for the maintenance of the action ; for if there are two intendments, it shall be taken most strongly against the plaintiff." *Tit. Pleader*, *c.* 22; *Dovaston* v. *Payne*, 2 *H. Black.* 527. In the case now before us, we have to choose between two intendments ; was this bridge built as a part of the extension of the defendants' road, or outside of it? I adopt, unhesitatingly, the former of the two, on these grounds : *first*, because it is the almost necessary conclusion of common sense, from the facts stated ; *second*, because it is most against the plaintiffs, who are the pleaders ; and, *third*, upon the legal principle that the presumption must be in favor of the innocence of the defendants. Drawing this inference, that the fair and legal conclusion is, that this bridge, the erection of which forms the *gravamen* of complaint, was put up by virtue of the franchise of the defendants, it follows, as an inevitable result, that the counts under consideration have been properly demurred to.

But it is urged, that as the placing of any obstruction in this navigable water was actionable at common law, the plaintiffs having sustained especial damage, a *prima facie* case is made, which calls for a justification. The fallacy of this position is easily demonstrable. For, if it be true, then this result, which no one, it is presumed, will maintain, follows, viz., that a cause

of action in this case would have been shown, even if the declaration had manifested, by proper averments and statements, that the bridge in question had been built not only in pursuance of, but in exact accordance with, the authority conferred by the supplement to the defendants' charter. Such a bridge would, indubitably, have been a common law nuisance, and, upon the principle claimed, would afford a *prima facie* cause of action. The position I must think too clearly erroneous to need further refutation. The error, probably, originated in not discriminating with sufficient care between the ordinary cases of pleadings in suits for nuisances, and the class of cases to which the present one belongs. In the usual strain of cases, the pleadings do rest upon a naked statement of the invasion of the plaintiff's common law right. This is the common mode of pleading, in both civil and criminal proceedings. Thus in indictments, as well as in declarations, the simple statement almost always is, that the defendant did an act which manifests nothing more than an infringement of the common law right of the public or of the individual. The forms are numerous, affording examples of this kind. Thus, as an illustration, if in this case the plaintiff had alleged simply that the defendants put or placed heaps of stones or pieces of timber in Newark bay, so as to obstruct navigation, with the necessary averments relating to the plaintiffs' particular damage, a *prima facie* case would clearly have been made against the defendants, which they would have been constrained to answer. Such is the mode adopted in *Ten Eyck* v. *Del. & Rar. C. Co.*, 3 *Harr.* 201. This would have been the proper course if the plaintiffs desired to deny the right of the defendants to put up any bridge at all over the water in question. But these cases must be carefully distinguished from those in which the plaintiff himself shows the existence of facts which are not to be regulated by the common law alone. Under such a condition of things, it may appear that the common law right of the plaintiff as to the particular matter, no longer exists, having been destroyed or superseded by the statutory

right of the defendant. As, by way of example, if a declaration alleged that A, with force and arms broke and entered the close of the plaintiff, and then and there did him certain damage, a cause of action would appear. But suppose the declaration should further allege, that A had been duly appointed a surveyor of the highways, and, by virtue of an order of the Court of Common Pleas, had made such entry, in order to lay out a road, it is equally clear that no cause of action would then appear. In such case, from the plaintiff's own showing, the defendant would seem to be clothed with a statutory power, which would convert into a legal act what, at common law, would have been a tort. This doctrine, when rightly comprehended, is but the application of the fundamental rule of pleading, that the declaration must show a *title*, *i. e.*, a cause of action in the plaintiff. But the pleader must be careful not to impair the case which he makes in favor of the plaintiff. Thus, a declaration on a bond would be good, at common law, without noticing the condition, but no one would pretend that if the condition should be set out that the pleading would stand without the averment of a breach. So in a count on a statute, an exception need not, many times, be noticed; but if such exception be referred to, and there be no negation of the defendant falling within it, is it not certain that the court will infer such circumstance in favor of the defendant? This is the foundation of the decision of Lord Ellenborough, in *The King* v. *The Mayor, &c., of Liverpool*, 3 *East* 86. I think upon this same foundation the present case should be rested.

In short, it appears to me that the rules of pleading to be applied to this case are, upon admitted principles, exceedingly clear. Thus, if the case of the plaintiffs is intended to be a denial of the right of the defendants to place any bridge over Newark bay, then the declaration should have shown simply that the defendants obstructed such water, by means which would have appeared to be destitute of all statutory authority. Then upon a justification by the defendants by force of the supplement to their charter, a demurrer would

have raised the question of the legality of such authority. But if, on the other hand, the real complaint is that the defendants, though possessed of the franchise to build this bridge, have abused such authority, by misplacing it or misconstructing it, then the counts should show, as these counts do show, that the defendants erected over this bay a railroad bridge; but in such case it must further appear in what respects the erection of such bridge is a violation of law. In this latter case, the abuse of the statutory power conferred on the defendants is the *gravamen* of the suit; and yet in these counts now before us, there is not a single fact shown which has a tendency even to manifest such abuse.

But it is likewise suggested that this is not the mode of pleading heretofore in use in this state, and the question is put, suppose a railroad or canal company enter upon a land owner and trespass is brought, will it be implied that the land has been condemned, and that such company is otherwise authorized to enter? The answer, I think, is two-fold. *First.* The usual course, so far as my knowledge extends, has been to count against these companies without disclosing any of the circumstances which would impart to them an apparent authority, as in the case of *Ten Eyck* v. *Del. and R. C. Co.*, already cited. And, *second*, in case such circumstances should be unnecessarily stated by the plaintiff, then, under the peculiar facts of each case, the question would be whether from the circumstances thus presented a fair inference could be drawn in favor of the legality of such entry. If the plaintiff, in his own pleading, left the facts in such a condition that a conclusion, upon reasonable grounds, could be made in favor of the defendants, then, as I think, such conclusion should be drawn. The declaration in the case of *Lee* v. *Del. and R. C. Co.*, 3 *Zab.* 243, was drawn upon this theory. The suit was for an actionable nuisance created by the canal of the defendants, and in those counts which alleged the erection of the canal as the nuisance—an act apparently legal—the *prima facie* legality of such act was avoided by statements showing its improper and unskillful

construction. Such, I think, is the usual and correct course. In *Wilkes* v. *Hungerford Market Co.*, 2 *Bing. N. C.* 336, the declaration is framed upon this principle. It was a suit for the obstruction of a public way, and as the plaintiff's declaration shows the plaintiff's authority, under certain conditions, to cause such obstructions, it correctly proceeds, by proper statements, to manifest an abuse of such authority. With reference to the subject embraced in the foregoing discussion, I have examined the authorities. The present case does not belong to a class which often occurs in practice, because it is but seldom that the plaintiff discloses, in his declaration, any part of the right of the defendant. I have found but a single case which is completely in point, though some of the other decisions, to which I shall refer, contain substantially the principles upon which I have relied. This particular precedent is the case of *The State* v. *Godfrey*, 24 *Me.* 232. It was a criminal prosecution, and the indictment was at common law, and alleged that the Penobscot river was an ancient and common highway, &c., and charged that the defendants had erected thereon a dam of certain dimensions across said river, to the common damage, &c. By a statute, which was declared therein to be a public act, the defendants were authorized, under certain restrictions, to place a dam in the Penobscot within certain limits. The indictment did not negative the erection as being within the charter, and there was no allegation that the dam was beyond the limits prescribed. The court say, that the question presented is, "whether the indictment should allege that the dam was not erected in pursuance of the authority of the statute, or whether the privilege conferred thereby should be pleaded by the defendants," which, it will be noted, is the precise point for adjudication in the present case. A verdict had gone against the defendants, and the motion was in arrest of judgment. That motion was granted. The court in stating its conclusion, lays down these grounds of judgment—"In this case the indictment is not for a violation of any statute, but for a nuisance upon a river

which had by prescription become a public highway. The statute modified the common law, and so long as it should be in force suspended the privileges previously enjoyed, which were inconsistent therewith. The common law no longer existed so far as this modification extended. If the erection as described in the indictment was only such as was authorized by the statute, there was no law which was infringed." In this case, then, the court clearly refused, even after verdict, to infer, in the absence of affirmative averments, that the dam stated in the pleading, was not within the prescribed limits, or was not built according to the statute. In other words, an inference was drawn in those respects in favor of the innocence of the defendants. This is the same principle upon which this present opinion rests.

The case of *Brown* v. *Mallett*, 5 *C. B.* 599, affords a similar illustration. It was an indictment charging the defendant with having permitted a barge, which had sunk in a navigable river, to remain there without placing a buoy, or other mark, to denote the danger. The court refused to draw the inference that the boat had sunk through the fault of the defendant.

The following cases, also, sustain the grounds upon which the above views have been founded : *The King* v. *Mayor, &c., of Liverpool,* 3 *East* 86 ; *Bartlett* v. *Baker,* 3 *Hurls. & Colt.* 153.

In conclusion, it may be remarked that if this action can be upheld in its present form, then it would seem a necessary inference, that in a suit against one of the companies authorized to build a bridge over the Delaware or other river, a count would be good which simply alleged the erection of a bridge over such navigable water, styling it an unlawful structure. Such a mode of pleading would answer no useful end. It conveys no information to the defendant. He cannot know in what respect the alleged unlawfulness consists. On the trial the plaintiff's evidence would be altogether unbounded. And if such a count, so framed, can be replied to by plea, the whole effect of the rule claimed by

the plaintiffs would be to defer the issue to the replication. Such a result is not desirable. In this case if the demurrer should be sustained, it is clear, that by the interposition of a plea of the proper character, the plaintiffs, in their replication, will be obliged to set forth an abuse of the statutory powers of the defendant. But having concluded that, from the color of right, which the plaintiffs themselves have given to the defendants, that the abuse of such right should have also appeared in these counts, I think the demurrer should be sustained.

Justices DALRIMPLE and DEPUE, concurred.

CITED *in Weber* v. *M. & E. R. R. Co.*, 6 *Vr.* 412.